## CHICAGO GRAIN DOOR CO. v. CHICAGO, B. & Q. R. CO. et al.

(Circuit Court, N. D. Illinois, E. D.    April 27, 1905.)

### No. 26,317.

PATENTS—SUIT FOR INFRINGEMENT—SUPPLEMENTAL BILL COVERING NEW INFRINGEMENTS.

> Where the defendant, pending a suit for infringement of a patent, begins the use of another alleged infringing device, separate and distinct from that complained of in the bill, although such fact does not render the suit defective, within the meaning of equity rule 57, but constitutes ground for an independent suit, the court may nevertheless, in the interest of saving delay and expense by the needless duplication of proofs, permit the question of the second infringement to be brought into the case by a supplemental bill.

In Equity. On demurrer to supplemental bill.

Raymond & Barnett, for complainant.
George S. Payson, for defendants.

SANBORN, District Judge. Demurrer to supplemental bill. The original bill was filed May 24, 1902, alleging infringement of patent No. 527,792, issued to E. A. Hill October 23, 1894, for a car-door bracket, and praying for discovery, accounting, payment of profits, and injunction. Proofs were closed in July, 1904. On November 5, 1904, by leave of court and consent of parties, a supplemental bill was filed, alleging infringement by a separate device, begun at some time after the original bill was filed, and that complainant did not know of the use or threatened use of such independent device until about 15 days before filing the supplemental bill. The usual order to demur, plead, or answer being entered, a demurrer was filed, setting up that the supplemental bill makes a new case, the suit has not become defective, the bill is unnecessary, the new matter is not material to the relief under the original bill, and that the alleged additional infringement, if any, can only be raised by a new original bill.

The Hill bracket, of which infringement is claimed, is a bracket with two vertical and one horizontal faces. The principal claim

is that a screw which holds the bracket to the door of a freight car has its head so protected by a housing or raised portion of the bracket as to prevent its being withdrawn by a thief attempting to enter the car by prying out the lower corner of the door without breaking the lock or seal. The door, resting on the horizontal portion of the bracket, prevents the bracket from being so rotated as to draw out the screw. The bracket used by defendant company at the time of filing the original bill is in two parts. It does not make use of the housing to prevent withdrawal or rotation, but protects and conceals the screw or bolt by sliding the outer part of the bracket, secured by flanges, down over the inner part; thus concealing and protecting from removal the screw or bolt which fastens the inner, and incidentally the outer, part of the bracket to the car door. The bracket complained of in the supplemental bill, called the "McGuire bracket," is also in two parts, but the bolt or screw is not entirely concealed. It is, however, protected by a hood, and the vertical wall of one of the parts being slid down partly over and close to the screw head; thus tending to prevent both withdrawal and rotation of the screw or bolt.

The supplemental bill charges that the McGuire bracket has been introduced into extensive use, in lots of 500 or more at a time, on defendant's cars, since suit commenced. The question is thus presented whether a new and independent infringement (assuming it to be such only for the purposes of the demurrer), not by a change or modification of an existing infringing or noninfringing device, but by an entirely separate one, can be introduced into the case by supplemental bill, or whether a new suit is not necessary.

It is assumed, merely for the purpose of deciding the demurrer, that the original bill is good on its face, that complainant then had a case, and that the proofs show infringement by defendants' first device. Has the suit become defective, or, if not, is there any other good reason why a supplemental bill is necessary, under equity rule 57? The rule follows:

"Whenever any suit in equity shall become defective from any event happening after the filing of the bill (as. for example, by change of interest in the parties) or, for any other reason, a supplemental bill or a bill in the nature of a supplemental bill may be necessary to be filed in the cause, leave to file same may be granted by any judge of the court on any rule day, upon proper cause shown, and due notice to the other party."

Fair verbal interpretation of the rule, and judicial construction as well, permit a supplemental bill where the original suit has not become defective. Undoubtedly the usual case is that of some defect, either existing when suit brought, or due to a change of interest or parties, producing complete or partial abatement. Where the defect exists in the original bill, either as to facts charged or relief prayed, this is proper for amendment, yet there is a class of supplemental bills which merely supply such defects, as in the prayer for relief, or bringing in a new party who should have been joined originally. 3 Dan. Ch. Pr. 1532; Story, Eq. Pl. § 343; Chase v. Searles, 45 N. H. 511, 521; Sheffield. etc., Co. v. Newman, 77 Fed. 787, 23 C. C. A. 459. As to lunacy, insolvency, transfer of

interest or liability, newly discovered evidence, etc., see Kennedy v. Bank, 8 How. 586, 12 L. Ed. 1209; Butler v. Cunningham, 1 Barb. 85; Jenkins v. Eldridge, 3 Story, 299, Fed. Cas. No. 7,267; Gillette v. Bate Refrig. Co. (C. C.) 12 Fed. 108; Metcalf v. Arnold, 132 Ala. 75, 32 South. 763; Western Tel. Mfg. Co. v. American El. Tel. Co. (U. S. Cir. Ct., Northern District of Illinois, March, 1905) 137 Fed. 603. Instances of supplemental bills sustained when the suit was not defective, but it was sought to reinforce or sustain the suit, are Jenkins v. International Bank, 127 U. S. 484, 8 Sup. Ct. 1196, 32 L. Ed. 189, where a judgment rendered after original bill was allowed to be brought forward by supplemental bill as an estoppel; Jaques v. Hall, 3 Gray, 194, and Hasbrouck v. Shuster, 4 Barb. 285, where the supplemental bill enlarged or changed the kind of relief; Mellor v. Smither, 114 Fed. 116, 52 C. C. A. 64, where complainant, having a valid cause of action, filed a defective bill, to which a demurrer was sustained, but who was allowed to file an amended and supplemental bill curing the allegations of the original bill, and setting up matters occurring after it was filed, fortifying his rights; Sheffield, etc., Co. v. Newman, 77 Fed. 787, 23 C. C. A. 459, where it was held that other and more extensive relief might be secured by supplemental bill; Parkhurst v. Kinsman, Fed. Cas. No. 10,758, where a new party, through whom defendant was covertly acting, was brought in by supplemental bill. In none of these cases had the bill become defective, but the action was in some way supported or re-enforced by the supplemental bill.

The rule that there can be no supplemental bill when the complainant has in fact no cause of action when suit commenced, and neither states a case, nor can do so, is too well settled to require extended citation. Mellor v. Smither, supra; New York, etc., Co. v. Lincoln, etc., Co. (C. C.) 74 Fed. 67; Bernard v. Toplitz, 160 Mass. 162, 35 N. E. 673, 39 Am. St. Rep. 465; Putney v. Whitmire (C. C.) 66 Fed. 387; Pinch v. Anthony, 10 Allen, 477; Hughes v. Crane, 135 Ill. 519, 26 N. E. 517. It is equally well settled in patent cases that complainant must have a cause of action when the bill is filed. Judson Mfg. Co. v. Burge-Donaho Co. (C. C.) 47 Fed. 463; Slessinger v. Buckingham (C. C.) 17 Fed. 454. In Humane Bit Co. v. Barnet (C. C.) 117 Fed. 316, this rule was carried so far as to dismiss the bill where the proof showed infringement after the filing of the bill, but before service of subpœna, following Farmers' L. & T. Co. v. Lake St. El. R. Co., 177 U. S. 51, 20 Sup. Ct. 564, 44 L. Ed. 667, deciding that suit is begun when the bill is filed.

The limited purpose of a supplemental bill is to repair or add to a good original case, shown by an original bill, good or bad, either to supply defects sometimes existing when suit brought, but usually afterwards occurring, or to support, fortify, or re-enforce.

There are many decisions, of which Milner v. Milner, 2 Edw. Ch. 114, and Prouty v. L. S. & M. S. R. Co., 85 N. Y. 272, are types, to the effect that matters occurring after bill filed, and which can be made the basis of an independent suit and decree, cannot be brought forward by supplemental bill, but must be made the basis of a new

suit. In the Milner Case a bill for divorce was filed. Afterwards defendant committed a separate but similar offense, and it was held that this could not be brought into the original suit by supplemental bill. This rule has not, however, been fully adopted in patent cases. By the practice in such cases, if an infringer so changes the use as to still infringe, although the new infringement might be made the subject of an independent suit, the damages or profits arising therefrom may be included and reported by the master, and such changed use is within the injunction. In Higby v. Columbian Rubber Co. (C. C.) 18 Fed. 601, there was a permanent injunction against continuing the manufacture and sale of a bustle. Defendants had made bustles like the one patented, but different from the one enjoined. They had ceased making those like the patent and like those enjoined, but continued to make a bustle somewhat different from the patent, and not having elastics as described in its claims. Plaintiff claimed that the defendants' bustle was "substantially" the same as the one enjoined. Judge Lowell says:

"Sometimes it is a great convenience to the parties to bring supposed infringements to the notice of the court by motion; and if a patent has been fully discussed and understood in the trial of the case, and if, in the light of that discussion, it is clear to the court that the change which has been made in a machine or a manufacture is merely colorable, there is no objection to this course. When a case has not been closed, but an account is being taken, an arrangement may sometimes be made to instruct the master to include the profits received from the alleged violation in his account, together with such evidence as may be given of its construction and mode of operation; and, if the issues are reformed so far as need be to meet this new case, there is a great saving of expense. The case upon the patent was closed months since, and upon the present motion for an attachment no regular issues are made up, and the evidence is taken ex parte."

In Westinghouse Air Brake Co. v. Christenson Engineering Co. (C. C.) 121 Fed. 558; Id. (C. C.) 126 Fed. 764—it had been held that defendant's valve did not infringe, but was a device similar to the Boyden valve, held not an infringement in 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136. Afterwards defendant so modified its valve as to eliminate the feature which differentiated it, and it was thought that it then infringed plaintiff's valve, as construed by the Supreme Court. A supplemental bill showing such later infringement was filed. It will be seen that the plaintiff had no case under its original bill, but sought to bring a subsequent infringement before the court by supplemental bill. Before the supplemental bill was filed, complainant moved for a temporary injunction on a showing of the modified valve. Judge Lacombe denied the motion for injunction on the ground that no cause of action existed under the original bill, but inadvertently, it would seem, gave leave to renew the motion after defendant should have applied for and obtained leave to file a supplemental bill. Such a bill was filed, and a demurrer heard by Judge Wallace (126 Fed. 764), who properly held that, when there is no cause of action in the original suit, there can be no supplemental bill. He said:

"The supplemental bill is, however, objectionable upon other grounds assigned by the demurrer. It is an attempt to put in issue facts occurring sub-

sequently to the filing of the original bill, which can be proved without the aid of the supplemental bill, and which, when proved, will not entitle the complainant to any relief which he cannot obtain under the original bill. According to the averments of the supplemental bill, the original bill charges the defendant with infringement of the complainant's patent by making, selling, and using certain air-brake mechanism containing the inventions of the patent. The supplemental bill alleges that since the original bill was filed, and while proofs were being taken in the suit, the defendant modified or changed its mechanism in such a manner that it 'clearly' contains the invention of the patent. If the defendant had not infringed when the original bill was filed, complainant is not entitled by a supplemental bill to establish a right to relief by proof of subsequent acts. On the other hand, if the defendant had infringed, the new acts of infringement can be proved upon the accounting, and full relief obtained under the averments of the original bill, and a supplemental bill is neither necessary nor proper. 'Not every relevant event happening posterior to a bill renders a supplemental bill admissible, and therefore, when only a fact has occurred which may be proved on taking the account prayed for by the original bill, a supplemental bill is improper and demurrable.' 3 Daniell, Ch. Pr. 1663. But if the original bill entitles the complainant to one kind of relief, and facts subsequently occur which entitle him to other or more extensive relief, he may have such relief by setting out new matter by a supplemental bill. Candler v. Pettit, 1 Paige, 169, 19 Am. Dec. 399."

In California Pav. Co. v. Molitor, 113 U. S. 617, 5 Sup. Ct. 618, 28 L. Ed. 1106, complainant secured an injunction against the use of a concrete pavement. Defendant then varied the mode of laying his pavement by ceasing to make it in separate and detached blocks, and only making a mark or crease on the surface while in a plastic state, thus giving the pavement the appearance of being made in detached blocks, and in fact answering all the purposes of detached blocks; the crease being sufficient to produce the results obtained by plaintiff's patent. Plaintiff moved for process of contempt, but it was held that this was not an appropriate remedy, since the question whether the new pavement was an infringement or not was a mixed question of law and fact, as was the question whether the original pavement constituted an infringement. The same rule was applied to the use by defendant of a card-playing tray constituting a different device. U. S. Playing Card Co. v. Spalding (C. C.) 93 Fed. 822. In Mack v. Levy (C. C.) 49 Fed. 857, after injunction defendant changed the device by using a different detachable handle for an opera glass; and it was held that it was doubtful whether this was an infringement, and the question would not be determined in contempt proceedings. Many other like cases are cited in Walker on Patents, § 708. A broader rule, however, applies to the taking of the account. The master may be directed to report on the use of various machines used by defendant, or may do so of his own motion. Cawood Patent, 94 U. S. 695, 708, 24 L. Ed. 238; Adams v. Keystone Mfg. Co. (C. C.) 41 Fed. 595. But the better practice seems to be for the court itself to decide all questions of infringement before the interlocutory decree is entered. Walker on Patents, § 742. See, also, Hoe v. Scott (C. C.) 87 Fed. 220; Cary Mfg. Co. v. Acme Flexible Clasp Co., 108 Fed. 873, 48 C. C. A. 118.

The question remains whether the use of the McGuire bracket should be brought in by supplemental bill, or left for a second suit.

The bracket is so different from defendants' first bracket that the question of infringement could not be decided in contempt proceedings, and ought not to be on an accounting, if any. I think the ends of justice, by the saving of delay, vexation, and expense, will be the better secured by the allowance of the supplemental bill.

Counsel for complainant, appealing to the discretion of the court, urge that the filing of a second bill would uselessly involve an original bill, an answer, a replication, and service of a subpœna, involving a delay of at least a quarter of a year, the proof of the patent, the proof of title, evidence as to the device used, expert testimony in chief, in reply, and in rebuttal by both parties as to the meaning of the patent, and as to each of the patents, etc., constituting the prior art in this case, depositions pro and con as to an alleged prior invention and prior use, the making of physical exhibits, and a lot of photolithographs, notarial or examiner's fees, typewriters' fees, attorneys' time and fees, the court costs, the cost of printing a record of 250 large pages, the cost of obtaining copies of patents therefor, and the time and expenses of separate briefs, all to no other purpose whatever but to duplicate the record now in print, because a new phase of the question of infringement is presented by the supplemental bill.

On the other hand, defendants' counsel urges the following:

"Let us suppose, however, that the original bill does not set forth a good case, and that complainant, fully aware of this, is striving to bolster it up by the introduction of another device, which it admits was not used until after the filing of the original bill, and which it may think more nearly resembles the device of the patent. (It may be fair to say, in passing [says defendants' counsel], that I have no doubt that this is the precise state of facts here.)"

If complainant has in reality no case in the original suit, the supplemental bill must fail. It seems to me that this question can be fairly considered and justly decided on final hearing, and that defendants' case will not be prejudiced by overruling the demurrer. It further seems that the ends of justice will be promoted by allowing the supplemental bill to stand. If so able a jurist as Judge Wallace had clearly decided the question, I should hesitate to decide differently. But I think the Westinghouse Case is distinguishable, for the reasons stated.

Demurrer overruled, with leave to plead or answer in 20 days.